Estate of Tully C. Estee, Deceased, First National Bank of Mount Vernon, N. Y., and Margaret Estee Mackay, Executors v. Commissioner.
Estate of Estee v. Commissioner
Docket No. 112135.
United States Tax Court
1943 Tax Ct. Memo LEXIS 118; 2 T.C.M. (CCH) 785; T.C.M. (RIA) 43420; September 17, 1943
*118 Marvin Lyons, Esq., for the petitioner. James C. Maddox, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in estate tax in the amount of $78,316.40. Petitioners have agreed to the adjustment made by respondent with respect to the fair market value of certain stock owned by decedent at the time of his death. The only question remaining in this proceeding is whether the value of the corpus of a trust created by decedent in 1922 should be included in his gross estate under section 302(c) of the Revenue Act of 1926, as amended by section 803(a) of the Revenue Act of 1932. The estate tax return was filed with the collector for the fourteenth district of New York. Most of the facts have been stipulated. Findings of Fact Petitioners are the duly qualified and acting executors of the estate of Tully C. Estee, hereinafter referred to as decedent, who died on May 13, 1938, a resident of the County of Westchester, State of New York. On August 30, 1922, the decedent, as grantor, executed a trust indenture under which he created a trust for the benefit of his wife, Mabel M. Estee, and his daughter, Margaret Estee Somers. *119 He made irrevocable transfers of property to designated trustees. The trust was to exist during the lifetime of the grantor, and upon his death the trust corpus was to be distributed. During the grantor's lifetime the income of the trust was to be distributed to Mabel Estee and Margaret Somers in certain proportions. None of the income could be distributed to the grantor, the decedent. If either Mabel Estee or Margaret Somers should die during the grantor's lifetime, her respective share of the income was to be paid for the duration of the trust as follows: If Mabel died, her share of the trust income was to be paid to Margaret and upon her death to Margaret's issue, and if there were no such issue, then to such beneficiaries, other than the grantor, the decedent, as he might designate in writing. If Margaret died during the grantor's lifetime, her share of the trust income was to be paid, for the duration of the trust, to her lawful issue, or if there were none, to Mabel Estee, but if Mabel should not be living then to such beneficiaries, other than the grantor, the decedent, as he might designate in writing. It was provided in the trust indenture that the grantor should not have *120 any personal interest in the income of the trust, but he reserved the right to direct the distribution of the income among beneficiaries other than himself. However, on March 14, 1928, the decedent exercised his right to amend the trust provisions relating to the distribution of the trust income by executing a supplemental agreement which provided, inter alia, that, having made an amendment to the original trust, (which is described hereinafter), he relinquished the reserved power to amend the terms of the trust, thereafter, relating to the disposition of the trust income. The amendment of March 14, 1928, gave to Mabel Estee the right to designate by her will and testament, or in some other instrument, the persons who should receive the income of the trust in the event of the deaths of the named beneficiaries. After March 14, 1928, the decedent did not have the right to direct the distribution of the trust income among beneficiaries. Upon the death of the grantor of the trust, the decedent, the trustees were to terminate the trust and distribute the corpus in stated proportions to Mabel Estee and Margaret Somers. If Mabel were not living, her share of the corpus was to pass *121 to Margaret and her heirs and assigns, or to Margaret's issue if she were not living, and if there were no issue of Margaret, then "to the lawful heirs and distributees" of the grantor of the trust, the decedent. If Margaret should not be living, her share in the trust corpus was to pass to her issue, or, if there were none, to Mabel, or if she were not living, then "to the lawful heirs and distributees" of the grantor, the decedent. The grantor of the trust, the decedent, did not reserve to himself any power to amend the terms of the trust relating to the disposition of the trust corpus. Prior to the decedent's death, Chemical National Bank of New York was substituted as trustee for the trustees originally named, and was the trustee on the date of the decedent's death. The decedent was predeceased by his wife, Mabel M. Estee, who died on February 3, 1936. The decedent was survived by his daughter, Margaret Estee Mackay (formerly Margaret Estee Somers) and by her two children, William Hill Somers, Jr., and Jeanne Estee Somers. The decedent was born on November 21, 1868, and was 69 years of age on the date of his death. Margaret Estee Mackay was born on January 9, 1895, and was 43 *122 years of age on the date of decedent's death. William Hill Somers, Jr., was born on October 19, 1922, and was 15 years of age on the date of decedent's death. Jeanne Estee Somers was born on April 29, 1925, and was 13 years of age on the date of decedent's death. On the date of the decedent's death, the property held in the trust had a fair market value of $186,917.71. On the date of the decedent's death, the actuarial value of the interest in the entire trust property which under the terms of the trust was to go upon the death of the decedent "to the lawful heirs and distributees" of the decedent in the event that he should be predeceased by his wife, daughter, and all of the lawful issue of his daughter, was not in excess of $131. In arriving at this value, the contingency that the decedent should be predeceased by all the issue of Margaret Estee Mackay who might be born after May 13, 1938, was not taken into account. The value of $131 represents.07 of 1 percent of the principal sum of $186,917.71 and was determined on the basis of a standard actuarial formula and the use of the Combined Experience Table of Mortality and the interest rate of 4 per cent as prescribed by respondent's *123 regulations. It has been stipulated by the parties that the transfer of property by the decedent to the trustees upon the creation of the trust was not a transfer made in contemplation of death, and the supplemental agreement of March 14, 1928, was not made by the decedent in contemplation of death. Opinion The only question presented is whether or not the corpus of the trust which the decedent created in 1922 is includible in decedent's gross estate under the provisions of section 302(c) of the Revenue Act of 1926, as amended by section 803(a) of the Revenue Act of 1932, the amendment having no retroactive effect, . The only provisions in the trust which afford respondent grounds for his determination are the provisions relating to the disposition of the trust corpus. The grantor of the trust had no interest in the trust income, and he relinquished during his lifetime every possible control over the disposition of the trust income. Respondent does not contend otherwise. Respondent contends, first, that under the provisions of the trust there remained the possibility that all or part of the trust corpus might revert *124 to the decedent's estate in the event that the grantor was not survived by Mabel Estee or by Margaret Somers or by any of her issue. The provision in the trust which gives rise to respondent's contention is the provision that upon the failure of Margaret Somers or her issue or of Mabel Estee to survive the grantor, the trust corpus was to pass to "the lawful heirs and distributees" of the grantor. Respondent finds a possibility of reverter in this provision similar to the possibility of reverter such as was present in . Respondent relies wholly upon the Hallock case. Respondent's first contention is answered by . See also, ; . In the Kellogg case the court regarded a provision similar to the one with which we are concerned here not as a possibility of a reversion to the grantor or his estate, but, rather, as a granting of contingent remainders to the grantor's next of kin. Here, as in the Kellogg *125 case, the grantor during his lifetime disposed completely of his interest in the trust corpus. Only upon the remote contingency that all of the remainder beneficiaries predeceased the grantor, was the corpus then to go to the "lawful heirs and distributees of the grantor." In the Kellogg case the court distinguished the Hallock case, saying, in effect, that the rationale of the Hallock case did not extend to a trust where, as here, there is no expressed provision in the trust indenture whereby "the grantor might pull back the corpus to himself upon the happening of some contingency terminable only by his death." The court concluded that the Kellogg case was not controlled by the Hallock case. Heretofore we have followed the Kellogg case, particularly in We do likewise in this case, and hold that this case is not controlled by the Hallock decision. Respondent makes a second contention which is, in substance, that the transfers in trust were incomplete in the grantor's lifetime because "the full and complete dominion over the property was suspended by the contingency of the *126 beneficiary surviving the decedent," and "by imposing this contingency on the gift, the decedent suspended the ultimate disposition of his property until the moment of his death." Respondent argues that, therefore, the inter vivos transfer to the trust was "intended to take effect in possession or enjoyment at or after his death." In short, respondent relies upon the exact language of the statute. By this argument, respondent is obviously, if somewhat indirectly, contending that the rationale of the Hallock case goes as far as to make section 302(c), as amended, applicable without regard to whether ownership, control, a possibility of reverter or some other attribute of title is retained by the grantordecedent. Respondent made a similar contention in the Kellogg case. The court rejected the argument saving, first, that , presented an insurmountable barrier to sustaining such contention, and, second, that "If the words of the statute just quoted are to receive such meaning * * *, they must receive it from the Supreme Court." In , *127 we rejected the same contention upon the authority of the Northern Trust Co. case. The view expressed in the Lasker case is applicable here. We have taken the same view as the court took in the Kellogg case, that nothing in the Hallock decision alters or affects the validity of the rule of the Northern Trust Co. case. See also, . See also, the recent decision of the Circuit Court of Appeals for the Second Circuit, , where the court stated its view to be that the Hallock decision did not touch the doctrine enunciated in the Northern Trust Co. case, "and was aimed at something quite different." Accordingly, respondent's second contention is rejected upon the authority of the Northern Trust Co. case, and in accordance with our recent decision in the Lasker case. It is held that the corpus of the inter vivos trust created by the decedent is not includible in his gross estate under the provisions of section 302(c), as amended. Petitioner, upon the issue presented, is sustained. *128 Decision will be entered under Rule 50.